UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

FATHIREE ALI,

        Plaintiff,

v.

STEVEN L. SIMMONS et al.,

        Defendants.
_____/

Case No. 1:19-cv-126

Honorable Janet T. Neff

## **OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983, the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. § 2000cc–1(a), and various state laws. Under the Prison Litigation Reform Act (PLRA), Pub. L. No. 104-134, 110 Stat. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss for failure to state a claim Plaintiff's claims against Defendant Michigan Department of Corrections (MDOC), because it is immune from suit. The Court also will dismiss for failure to state a claim Plaintiff's failure-to-train claim (Count VIII) against

Defendant Stump. Plaintiff's remaining claims against Defendants Simmons, Hall, Stump, Rockwell, Coburn, Hickok, and Wagner will remain in the case.

## Discussion

I. Factual allegations

Plaintiff presently is incarcerated with the MDOC at the Lakeland Correctional Facility (LCF) in Coldwater, Branch County, Michigan. The events about which he complains, however, occurred at the Bellamy Creek Correctional Facility (IBC) in Ionia, Ionia County, Michigan. Plaintiff sues the MDOC and the following IBC officials: Correctional Officers Steven L. Simmons, Michael Hall, Kevin Rockwell, Adam Coburn, (unknown) Hickok, and (unknown) Wagner; and Sergeant Gary Stump.

Plaintiff alleges a series of actions by Defendants between June 2 and August 12, 2015. Plaintiff asserts that the individual Defendants harassed him on the basis of his Muslim religion; barred him from praying in the small unit yard; retaliated against him for complaining about their conduct by issuing false misconducts and assaulting him; used excessive force against him; and denied him necessary medical care. Plaintiff contends that Defendants' actions violated the First, Eighth, and Fourteenth Amendments, the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. § 2000cc-1, and a variety of state laws.

In his amended complaint, Plaintiff alleges that, as a devout Muslim, he must pray five times each day at specified times. On June 2, 2015, Plaintiff complained to Deputy McCauley (not a Defendant) that Defendant Simmons was harassing and taunting Muslim inmates and prohibiting prayer in the small yard. McCauley indicated that he would talk to Simmons. On June 24, 2015, Simmons issued misconduct tickets to Plaintiff and three other Muslim prisoners for extending salaams to a passing Muslim prisoner. Plaintiff complained to McCauley the following

day. Defendant Simmons then told Plaintiff, "Your complaints to the deputy change[] nothing. You'll pay for them." (Proposed Am. Compl., ECF No. 12-1, PageID.72.)

On August 12, 2015, Plaintiff was locked in the prison yard at 1:45 p.m., during shift change. The time came for Dhur prayers, and Plaintiff and prisoner Douglas began their prayers. The first-shift officer did not interfere with the prayers. When Plaintiff finished praying with Douglas, he assisted a new adherent, prisoner Richardson, with his prayers. Defendant Simmons approached, shouting obscenities, mocking, and harassing the prisoners. Plaintiff was on his knees when, without warning, Defendant Stump snatched his arm and twisted it. Defendant Hall sprayed Plaintiff's eyes with a chemical agent. Defendants Rockwell and Wagner then knocked Plaintiff to the ground, where Defendants Stump, Rockwell, and Wagner kicked, struck, and kneed Plaintiff in the neck. Plaintiff screamed and began to chant religious remedies. The blows continued until Plaintiff was unresponsive and nearly unconscious. Defendants Hickok and Coburn observed and possibly participated. At a minimum, Hickok and Coburn failed to intervene.

Defendant Hickok placed handcuffs on Plaintiff, securing them too tightly and causing Plaintiff significant pain. Plaintiff received lacerations to his wrist and numerous bruises to his arms, back, wrist, and legs. During the assault, Defendant Simmons aimed a taser at Plaintiff. At no time did Plaintiff resist, threaten officers, or break prison rules.

Plaintiff contends that Defendants Simmons, Hall, Hickok, and Stump repeatedly have engaged in harassment and abuse of Muslim inmates. Plaintiff alleges that McCauley received notice of the harassment of Defendants Simmons, Hall, Hickok, and Stump, through numerous complaints, but he failed to take disciplinary action. After the assault, Plaintiff was

3

placed in a shower area, but without access to water, so he could not rinse the irritant from his eyes and lungs.

Plaintiff alleges that Defendants, though aware of Plaintiff's injuries, provided him no medical assistance. Plaintiff also alleges that Defendants subsequently took adverse actions against Plaintiff—including writing false misconduct tickets and cancelling Plaintiff's medical gym shoes and inserts—in retaliation for his exercise of his speech and religious rights and without due process of law.

Plaintiff contends that the individual Defendants' actions resulted in the following federal and state causes of action: denial of Plaintiff's First Amendment right to freely exercise his religion; denial of Plaintiff's rights under the RLUIPA; denial of equal protection; ethnic intimidation under Mich. Comp. Laws § 750.146b; use of excessive force under the Eighth Amendment; denial of medical care under the Eighth Amendment; retaliation for the exercise of his First Amendment rights to petition the government and to engage in religious expression; and both negligent and intentional infliction of emotional distress. He also contends that Defendants MDOC and Stump failed to train and/or failed to adopt adequate policies on the taking of property, the conduct of hearings, and the prevention of retaliation.

Plaintiff seeks declaratory relief, together with compensatory and punitive damages.

II. <u>Failure to state a claim</u>

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include

4

more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to

5

identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

   III. Sovereign Immunity

Plaintiff may not maintain a §1983 action against the MDOC, because the department is entitled to sovereign immunity. Regardless of the form of relief requested, the states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98-101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1993). Congress did not expressly abrogate Eleventh Amendment immunity when enacting § 1983, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court, *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). In numerous opinions, the Sixth Circuit has specifically held that the MDOC is absolutely immune from suit under the Eleventh Amendment. *See*, *e.g.*, *Harrison v. Michigan*, 722 F.3d 768, 771 (6th Cir. 2013); *Diaz v. Mich. Dep't of Corr.*, 703 F.3d 956, 962 (6th Cir. 2013); *McCoy v. Michigan*, 369 F. App'x 646, 653-54 (6th Cir. 2010). In addition, the State of Michigan (acting through the MDOC) is not a "person" who may be sued under §1983 for money damages. *See Lapides v. Bd. of Regents*, 535 U.S. 613, 617 (2002) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989)); *Harrison*, 722 F.3d at 771. The MDOC therefore is immune from suit under § 1983.

Further, in *Sossamon v. Texas*, 563 U.S. 277, 288 (2011), the Supreme Court squarely held that the provision of the RLUIPA that creates a private cause of action for violations of the RLUIPA and authorizes a person to assert such violations as a claim or defense to obtain "appropriate relief" against the government did not clearly and unequivocally notify states that, by

6

accepting federal funds, they were waiving their sovereign immunity to suits for money damages under the RLUIPA. The Court therefore concluded that the statute did not result in waiver of state's immunity from suit by prisoners whose free exercise rights were allegedly burdened. Congress, by using the phrase "appropriate relief," did not clearly manifest its intent to include a damages remedy. *Id.* The MDOC therefore is immune from suit under the RLUIPA, though Plaintiff may seek declaratory and prospective injunctive relief against the state by way of an official-capacity suit against MDOC officials, under the doctrine of *Ex Parte Young*, 209 U.S. 123, 159-60 (1908) (Eleventh Amendment immunity does not bar individual from pursuing declaratory and injunctive relief by way of an official-capacity claim against a state official).

Finally, the Supreme Court squarely has "held that the Eleventh Amendment bars pendent state-law claims against nonconsenting state defendants in federal court." *Raygor v. Regents of Univ. of Minn.*, 534 U.S. 533, 540-41 (2002) (citing *Pennhurst*, 465 U.S. at 120). As a result, Plaintiff's state-law claims against the MDOC are barred by sovereign immunity.

For all these reasons, the MDOC will be dismissed as a party defendant on grounds of sovereign immunity.

### IV.    Failure to Train

In Count VIII of his amended complaint, Plaintiff alleges that Defendant Stump (together with the now-dismissed MDOC) failed to train and adopt adequate policies regarding the taking of property, failed to train and adopt adequate policies on how and when to conduct administrative hearings, and failed to train and adopt adequate policies on the prevention of retaliatory conduct.

Plaintiff's allegations against Defendant Stump for his alleged failures are wholly conclusory and appear to rest solely on Stump's negligent supervision or his failure to adequately

7

investigate and respond to Plaintiff's grievances. Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575-76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

Plaintiff alleges no facts suggesting that Defendant Stump, a Sergeant at IBC, had any authority to develop and impose prison policy directives. Moreover, with respect to the failure to train, Plaintiff alleges nothing beyond his conclusion that Sergeant Stump failed to train his subordinates. Such allegations fall far short of stating an actionable § 1983 claim. *Iqbal*, 556 U.S. at 676. The Court therefore will dismiss Count VIII of Plaintiff's complaint. Plaintiff's claim against Defendant Stump for Stump's involvement in the August 12, 2015, incident, however, remains in the case.

## Conclusion

Having conducted the review of the amended complaint required by the Prison Litigation Reform Act, the Court determines that Defendant Michigan Department of Corrections

will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).  The Court will also dismiss, for failure to state a claim, Plaintiff's failure-to-train claim against Defendant Stump.  Plaintiff's remaining claims against Defendants Simmons, Hall, Stump, Rockwell, Coburn, Hickok, and Wagner remain in the case.

An order consistent with this opinion will be entered.


Dated: May 31, 2019                                          /s/ Janet T. Neff
                                                                        Janet T. Neff
                                                                         United States District Judge