UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FATHIREE ALI #175762,

    Plaintiff,                                            Hon. Janet T. Neff

v.                                                       Case No. 1:19-cv-126

STEVE SIMMONS, et al.,

    Defendants.

_____/

**REPORT AND RECOMMENDATION**

This matter is before the Court on Defendants' Motion for Summary Judgment based on Plaintiff's failure to exhaust his administrative remedies. (ECF No. 35.) Plaintiff has failed to respond to Defendants' motion within the time permitted by Western District of Michigan Local Civil Rule 7.2(c). Pursuant to 28 U.S.C. § 636(b)(1)(B), the undersigned recommends that Defendants' motion be **GRANTED**.

**BACKGROUND**

Plaintiff, a prisoner incarcerated with the Michigan Department of Corrections (MDOC), has sued MDOC employees Steven Simons, Michael Hall, Gary Stump, Kevin Rockwell, Adam Coburn, (unknown) Hickok and (unknown) Wagner pursuant to 42 U.S.C. § 1983 alleging claims for violation of his First Amendment right to freely exercise his religion, retaliation in violation of the First Amendment, denial of his rights under the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. § 2000cc-1, use of excessive force and denial of medical care

1

in violation of the Eighth Amendment, and denial of equal protection under the Fourteenth Amendment.[1]  Plaintiff also alleged various state-law claims.

The events that form the basis of Plaintiff's claims occurred at the Bellamy Creek Correctional Facility (IBC) in Ionia, Michigan, between June 2 and August 11, 2015.[2]  Plaintiff alleges that he is a devout Muslim and that the events at issue occurred because of his exercise of his religion.

First, Plaintiff alleges that on June 2, 2015, he complained to Deputy McCauley, who is not a defendant here, that Defendant Simmons was harassing and taunting Muslim inmates and prohibiting prayer in the small yard.  McCauley indicated that he would talk to Simmons.  (ECF No. 17 at PageID.103.)  On June 24, 2015, Simmons issued Plaintiff and three other Muslim prisoners misconduct tickets for extending salaams (a required Islamic greeting) to a passing Muslim prisoner.  Plaintiff complained to McCauley the following day.  Defendant Simmons later told Plaintiff, "Your complaints to the deputy change[] nothing.  You'll pay for them."  (*Id.*)

On August 11, 2015, Plaintiff was locked out in the yard and could not return to his cell because of a shift change.  The afternoon prayer time had started, so Plaintiff and another prisoner proceeded to pray.  While Plaintiff was praying with a new adherent, prisoner Richardson, Defendant Simmons approached them, shouting obscenities and mocking and harassing Plaintiff and prisoner Richardson.  Plaintiff was on his knees when, without warning, Defendant Stump

---

[1] Plaintiff's claims against the MDOC and his failure-to-train claim against Defendant Stump were previously dismissed pursuant to 28 U.S.C. §§ 1915(e) and 1915A, and 42 U.S.C. § 1997e(c). (ECF No. 16.)

[2] Most of Plaintiff's claims arose out of an incident that Plaintiff alleges occurred on August 12, 2015.  The documents Defendants submitted in support of their motion indicate that the incident in fact occurred on August 11, 2015.  (ECF No. 36-3 at PageID.193; ECF No. 36-4 at PageID.208.)  Accordingly, for purposes of this report and recommendation, the undersigned will refer to the incident as having occurred on August 11, 2015.

snatched Plaintiff's arm and twisted it. Defendant Hall sprayed a chemical agent in Plaintiff's eyes. (*Id.* at PageID.104.) Defendants Rockwell and Wagner then knocked and pinned Plaintiff to the ground, where Defendants Stump, Rockwell, and Wagner kicked, struck and kneed Plaintiff in the neck. Plaintiff screamed and began to chant religious remedies, and Defendant Hall forcibly twisted Plaintiff's wrist to break it. The blows continued until Plaintiff was unresponsive and nearly unconscious. Defendants Hickok and Coburn observed and possibly participated in the mistreatment. At a minimum, they failed to intervene. (*Id.*)

Plaintiff further alleges that Defendant Hickok placed handcuffs on Plaintiff that were too tight and caused Plaintiff significant pain. As a result, Plaintiff received lacerations to his wrist and numerous bruises to his arms, back, wrist, and legs. During the assault, Defendant Simmons aimed a taser at Plaintiff. Plaintiff never resisted, threatened officers, or broke the rules. (*Id.* at PageID.104–05.)

After the assault, Plaintiff was placed in a shower area without access to water and thus was unable to rinse the irritant from his eyes. Plaintiff alleges that, although Defendants were aware of his injuries, they failed to provide him medical assistance. (*Id.* at PageID.105.) Plaintiff further alleges that Defendants later took adverse actions against him, including writing false misconduct tickets and cancelling his medical gym shoes and inserts, in retaliation for Plaintiff's exercise of his First Amendment rights, including practicing his religion, and without due process of law. (*Id.* at PageID.16–17.)

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Material facts are facts that are defined by substantive law and are necessary to apply the law. *Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute is genuine if a reasonable jury could return judgment for the non-moving party.  *Id.*

The court must draw all inferences in a light most favorable to the non-moving party but may grant summary judgment when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party."  *Agristor Fin. Corp. v. Van Sickle*, 967 F.2d 233, 236 (6th Cir. 1992) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

While a moving party without the burden of proof need only show that the opponent cannot sustain his burden at trial, a moving party with the burden of proof faces a "substantially higher hurdle."  *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002).  Where the moving party has the burden, "his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party."  *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986).  The Sixth Circuit has emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it."  *Arnett*, 281 F.3d at 561.  Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact."  *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

## ANALYSIS

Pursuant to 42 U.S.C. § 1997e(a), a prisoner must exhaust all available administrative remedies before filing a lawsuit with respect to prison conditions under 42 U.S.C. § 1983.  *See Porter v. Nussle*, 534 U.S. 516, 524 (2002).  Prisoners are no longer required to demonstrate exhaustion in their complaints.  *See Jones v. Bock*, 549 U.S. 199, 216 (2007).  Instead, failure to exhaust administrative remedies is "an affirmative defense under the PLRA," which the defendant bears the burden of establishing.  *Id*.  With respect to what constitutes proper exhaustion, the

Supreme Court has stated that "the PLRA exhaustion requirement requires proper exhaustion," defined as "compliance with an agency's deadlines and other critical procedural rules." *Woodford v. Ngo*, 548 U.S. 81, 90-93 (2006). In *Bock*, the Court reiterated:

> Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to "properly exhaust." The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion.

*Bock*, 549 U.S. at 218.

MDOC Policy Directive 03.02.130 sets forth the applicable grievance procedure for prisoners in MDOC custody. Prior to submitting a grievance, a prisoner is required to "attempt to resolve the issue with the staff member involved within two business days after becoming aware of a grievable issue, unless prevented by circumstances beyond his/her control or if the issue falls within the jurisdiction of the Internal Affairs Division in Operations Support Administration." Mich. Dep't of Corr. Policy Directive 03.02.130 ¶ P. If this attempt is unsuccessful (or is inapplicable), the prisoner may submit a Step I grievance. *Id.* The Step I grievance must be submitted within five business days after attempting to resolve the matter with staff. *Id.* at ¶ V. The issues asserted in a grievance "should be stated briefly but concisely," and the "[d]ates, times, places, and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ R.

If the prisoner is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II within ten business days of the response, or if no response was received, within ten business days after the response was due. *Id.* at ¶ BB. If the prisoner is dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal the matter to Step III. *Id.* at ¶ FF. The Step III grievance must be submitted within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.*

5

In support of their motion, Defendants attach a Step III Grievance Report showing grievances that Plaintiff exhausted through Step III during the relevant time period. (ECF No. 36-2.) In addition, Defendants have submitted a Misconduct Summary Report and Misconduct Packets for Plaintiff. (ECF No. 36-3.) Defendants note that Plaintiff pursued four grievances through Step III for incidents occurring at IBC between May and September 2015, which would cover the period pertaining to Plaintiff's allegations. Two of those grievances, Grievances IBC-15-05-1258-07a and IBC-15-05-1259-07a concerned complaints about legal mail that are unrelated to the claims Plaintiff asserts in this case. (ECF No. 36-3 at PageID.195–204.)

**I.      First Amendment-Free Exercise of Religion, RLUIPA and Equal Protection**

In Counts I through III of his First Amended Complaint, Plaintiff alleges that Defendants' refusal of, and interference with, his prayer on the yard on August 11, 2015 violated his First Amendment right to free exercise of his religion, RLUIPA, and his right to equal protection. Plaintiff failed to exhaust a grievance relating to these claims. To the extent Grievance IBC-15-09-2436-28e could be deemed to relate to any of these claims, Plaintiff did not properly exhaust this grievance as it was rejected as untimely at all three steps of review.[3] (ECF No. 36-3 at PageID.189–194.) Accordingly, these claims are subject to dismissal without prejudice for lack of exhaustion.

**II.     Eighth Amend-Excessive Force and Denial of Medical Care, Ethnic Intimidation**

In Counts IV, V, and VI, Plaintiff alleges that Defendants intimidated, harassed, bullied and assaulted him because of his religious beliefs and violated his rights under the Eighth Amendment when they used excessive force and failed to provide him medical care in connection

---

[3] The remaining grievance, Grievance IBC 15-08-2347-17Z concerned an incident on August 17, 2015 in which Plaintiff was forced to remove his kuffi cap. (ECF No. 36-3 at PageID.184–188.) This grievance is unrelated to the claims at issue.

6

with the August 11, 2015 incident. In Grievance IBC-15-09-2436-28e, Plaintiff complained about Defendants' use of force and religious-based intimidation on August 11, 2015. The grievance did not complain about denial of medical care. Grievance IBC-15-09-2436-28e was rejected as untimely at all three steps, and therefore, could not properly exhaust any claim. As noted above, Plaintiff has not responded to the motion for summary judgment and offered any reason why the Court should not find that he has failed to properly exhaust his claims.

### III.     First Amendment Retaliation

In Count VII, Plaintiff alleges a claim for First Amendment retaliation. Plaintiff does not specify the retaliatory acts of which he complains. There is no evidence that Plaintiff exhausted a grievance at IBC complaining about Defendants' alleged retaliation on August 11, 2015, or any other date.

In his factual allegations, Plaintiff refers to a misconduct that Defendant Simmons wrote on June 24, 2015, which was "reviewed, [but] never heard" after Plaintiff complained to non-Defendant McCauley. (ECF No. 17 at PageID.103.) Plaintiff also appears to complain about false misconducts following the August 11, 2015 incident.

Decisions made in misconduct hearings are non-grievable. MDOC Policy Directive 03.02.130 ¶ F(2), (3). In addition, pursuant to Michigan law, "[a] prisoner aggrieved by a final decision or order of a hearings officer shall file a motion or application for rehearing in order to exhaust his or her administrative remedies before seeking judicial review of the final decision or order." M.C.L. § 791.255(1); *see also* MDOC Policy Directive 03.03.150 ¶ UUU (providing for appeal of a class II misconduct hearing officer's decision).

In *Siggers v. Campbell*, 652 F.3d 681, 694 (6th Cir. 2011), the Sixth Circuit confirmed that claims concerning decisions made in the misconduct hearing process must be exhausted through that process, not the prison grievance procedure. *See Smith v. Goulet*, No. 1:17-CV-618,

7

2018 WL 3688468, at *2 (W.D. Mich. Aug. 3, 2018) (noting that "decisions made in hearings conducted by the office of policy and hearings, hearings and appeals division, and minor misconduct hearings are nongrievable" and that prisoners must raise issues concerning misconduct tickets in the misconduct hearing). Following *Siggers*, courts in both this district and the Eastern District of Michigan have concluded that, in order to properly exhaust a retaliatory misconduct ticket claim, the prisoner must raise that claim at the misconduct hearing and, if unsuccessful, in a motion or application for rehearing or in an appeal. *See*, *e.g.*, *Rush v. Newcomb*, No. 2:18-cv23, 2019 WL 3755967, at *6 (W.D. Mich. May 24, 2019), *report and recommendation adopted* 2019 WL 3733846 (W.D. Mich. Aug. 8, 2019) (concluding that the plaintiff failed to exhaust because he "failed to assert any fact that could support a claim of retaliatory action at the time of his misconduct hearing, and he did not petition to reopen his hearing"); *Ayotte v. Stemen*, No. 15-13826, at *5 (E.D. Mich. Feb. 27, 2019), *report and recommendation adopted* 2019 WL 1349607 (E.D. Mich. Mar. 26, 2019) (noting that, pursuant to *Siggers*, a prisoner "must argue that his receipt of a misconduct ticket was based on conspiracy or retaliation during the first misconduct hearing" and then must file a motion or application for rehearing if unsuccessful); *Harris-Bey v. Alcodray*, No. 16-12666, 2017 WL 3124328, at *4 (E.D. Mich. July 24, 2017) (concluding that the plaintiff failed to properly exhaust because "he did not allege retaliation at his misconduct hearing and, additionally, he did not appeal the finding of guilt following that hearing as required by MDOC Policy Directive 03.03.150 at VVV"); *Alexander v. Ojala*, No. 2:16-cv-85, 2016 WL 6662559, at *3 (W.D. Mich. Sept. 23, 2016), *report and recommendation adopted*, 2016 WL 6659133 (W.D. Mich. Nov. 10, 2016) ("Plaintiff could only exhaust the claim that he was given a retaliatory misconduct ticket by asserting this claim during his misconduct hearing.").

Here, Plaintiff failed to raise his claim of a retaliatory misconduct ticket during the misconduct hearing held on August 17, 2015. (ECF No. 36-4 at PageID.208.) Thus, Plaintiff failed to properly exhaust his claim that that the misconduct ticket arising from the August 11, 2015 incident was retaliatory. As for the June 24, 2015 misconduct ticket, Plaintiff's claim, as the undersigned interprets it, is that a hearing was not held on the ticket. If Plaintiff was not afforded a hearing, he could have filed a grievance. As set forth above, however, he did not do so. Accordingly, Plaintiff has not properly exhausted his retaliation claim.

## CONCLUSION

For the foregoing reasons, the undersigned recommends that Defendants' Motion for Summary Judgment based on Plaintiff's failure to exhaust his administrative remedies (ECF No. 35) be **granted** and that Plaintiff's claims set forth in his First Amended Complaint be **dismissed without prejudice**.

## NOTICE

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court 14 days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Dated: May 5, 2020                               /s/ Sally J. Berens                
                                                 SALLY J. BERENS
                                                 U.S. Magistrate Judge