UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FATHIREE ALI #175762,

        Plaintiff,                                   Hon. Janet T. Neff

v.                                             Case No. 1:19-cv-126

STEVE SIMMONS, et al.,

        Defendants.

_____/

## REPORT AND RECOMMENDATION

Plaintiff, a prisoner incarcerated with the Michigan Department of Corrections (MDOC), filed a complaint pursuant to 42 U.S.C. § 1983 against MDOC employees Steven Simons, Michael Hall, Gary Stump, Kevin Rockwell, Adam Coburn, (unknown) Hickok and (unknown) Wagner, alleging claims based on incidents that occurred at the Bellamy Creek Correctional Facility (IBC) in Ionia, Michigan, between June 2 and August 11, 2015. The Court has previously dismissed many of Plaintiff's claims on the ground that he failed to exhaust his administrative remedies. (ECF No. 53.) Accordingly, Plaintiff's remaining claims are that Defendants retaliated against him by (1) issuing him false misconduct tickets on August 11, 2015; and (2) canceling his medical shoe detail. (*Id.* at PageID.383–85.)

This matter is presently before me on Defendants' Motion for Summary Judgment. (ECF No. 61.) Pursuant to 28 U.S.C. § 636(b)(1)(B), and for the reasons set forth below, I recommend that Defendants' motion be **GRANTED**.

# I.  Background

Plaintiff is a devout Muslim and alleges that the events at issue occurred because of his exercise of his religion. Plaintiff alleges that on June 2, 2015, he complained to Deputy Warden McCauley that Defendant Simmons was harassing and taunting Muslim inmates and prohibiting prayer in the small yard. McCauley indicated that he would talk to Simmons. (ECF No. 17 at PageID.103.) Plaintiff alleges that, in spite of his complaint of harassment to McCauley, Simmons continued to harass him because of his Muslim faith. (*Id.*)

On August 11, 2015, Plaintiff was locked out in the yard and could not return to his cell because of a shift change. The afternoon prayer time had started, so Plaintiff and another prisoner, Douglas, proceeded to pray. During this time, Plaintiff also prayed with a new adherent, prisoner Richardson. Defendant Simmons noticed Plaintiff and the other prisoners and approached them. Plaintiff claims that Defendant Simmons shouted obscenities and mocked and harassed Plaintiff and prisoner Richardson. (*Id.* at PageID.104; ECF No. 62-2 at PageID.445.) Plaintiff further claims that Defendant Stump snatched Plaintiff's arm and twisted it, Defendant Hall sprayed a chemical agent in Plaintiff's eyes, and Defendants Rockwell and Wagner knocked and pinned Plaintiff to the ground. He further claims that Defendants Stump, Rockwell, and Wagner then kicked, struck, and kneed him in the neck. (ECF No. 17 at PageID.104.)

Plaintiff further alleges that Defendant Hickok placed handcuffs on Plaintiff that were too tight and caused Plaintiff significant pain. Plaintiff says that he received lacerations to his wrist and numerous bruises to his arms, back, wrist, and legs. Plaintiff claims that during the entire incident, he never resisted, threatened officers, or broke the rules. (*Id.* at PageID.104–05.)

As a result of the August 11, 2015 incident, Defendant Stump issued Plaintiff a major misconduct ticket for Assault and Battery (staff victim), and Defendant Simmons issued Plaintiff

a misconduct ticket for Disobeying a Direct Order and Creating a Disturbance. (ECF No. 62-2 at PageID.446; ECF No. 62-5 at PageID.470; ECF No. 62-6 at PageID.474.) The two tickets (three charges in all) were combined for a single hearing that was held on August 17, 2015 before Hearing Officer Susan Burke. (ECF No. 36-4 at PageID.208–09; ECF No. 62-2 at PageID.446.) Following the hearing, Hearing Officer Burke found Plaintiff guilty of all three misconduct charges. (ECF No. 36-4 at PageID.208.) Plaintiff requested a rehearing on the guilty finding on August 23, 2015. (*Id.* at PageID.213.) The request was denied on October 14, 2015, and the denial was returned to Plaintiff the same date. Plaintiff was also informed of the decision on November 23, 2015. (ECF No. 46-6 at PageID.332–33.)

Plaintiff was transferred from IBC to Muskegon Correctional Facility (MCF) on September 8, 2015. (ECF No. 62-3 at PageID.457.) While he was at IBC, Plaintiff had a medical accommodation for athletic shoes for his gout that had been issued in 2008. (ECF No. 62-4 at PageID.463.) When Plaintiff was sent to MCF, IBC custody staff requested that the receiving facility purchase new athletic shoes for Plaintiff because his current pair were not included with his property. (*Id.* at PageID.463, 467.) On September 9, 2015, P.A. Barbara Bien saw Plaintiff at MCF regarding the request for athletic shoes. She noted that his accommodation for athletic shoes was from 2008, and there was no indication in Plaintiff's medical record that the Assistant Chief Medical Officer (ACMO) had approved Plaintiff for special shoes. (*Id.* at PageID.463.) P.A. Bien scheduled an appointment to evaluate Plaintiff's need for athletic shoes. (*Id.*) On October 1, 2015, Plaintiff was evaluated for a special shoe accommodation. During the visit, he informed the provider that he received athletic shoes for gout. The provider indicated that she would discuss with the ACMO whether gout supported a special shoe accommodation. (*Id.* at PageID.461.) The

provider discontinued the accommodation after the ACMO advised that gout did not support a special shoe accommodation. (*Id.* at PageID.462.)

## II.    Summary Judgment Standard

Summary judgment is appropriate if there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Material facts are facts that are defined by substantive law and are necessary to apply the law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine if a reasonable jury could return judgment for the non-moving party. *Id.*

The court must draw all inferences in a light most favorable to the non-moving party but may grant summary judgment when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Agristor Fin. Corp. v. Van Sickle*, 967 F.2d 233, 236 (6th Cir. 1992) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

While a moving party without the burden of proof need only show that the opponent cannot sustain his burden at trial, a moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002). Where the moving party has the burden, "his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986). The Sixth Circuit has emphasized that the party with the burden of proof "must show that the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561. Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

4

### III.   Discussion

**A.     Failure to Comply With Local Civil Rule 7.2(b)(i)**

As an initial matter, I address Defendants' argument that I should strike a portion of Plaintiff's response brief based on his failure to comply with Local Civil Rule 7.2(b)(i), which provides that supporting and opposing briefs produced on a computer shall not exceed 10,800 words (exclusive of certain items) and that briefs that are hand-written or produced on a typewriter shall not exceed 25 pages in length (exclusive of the same items). Defendants note that Plaintiff's response is 40 pages long and that Plaintiff failed to seek leave to exceed the page limitations. They further note that Plaintiff requested four extensions of time due to reduced access to the law library, and they argue that Plaintiff's requests appear to have been based more on his quest to obtain a tactical advantage rather then to obtain reasonable access to the law library. Accordingly, Defendants request that I strike pages 26–40 of Plaintiff's response brief. (ECF No. 77 at PageID.677–78.)

It is not clear whether Plaintiff (or his writer) produced the response on a computer or on a typewriter, but in any event, Plaintiff violated this Court's local civil rules either by filing a type-written brief in excess of the 25-page limitation without seeking leave to file an oversized brief or, alternatively, without filing the required certificate of compliance stating the number of words in the document and the version of the word processing software that was used to generate the word count. *See* W.D. Mich. LCivR 7.2(b)(ii). Rather than striking the excess pages, the proper remedy for the violation would be striking the entire brief. While I would certainly act well within my discretion in doing so based on Plaintiff's failure to follow the local rules, I find it unnecessary because striking the brief will not affect the outcome of the motion. That is, even considering Plaintiff's entire brief, his arguments fail to overcome Defendants' motion.

5

### B.    Retaliation Claims

As noted above, Plaintiff's only remaining claims are that Defendants retaliated against him in filing false misconduct tickets and canceling his medical shoe detail or accommodation. To the extent Plaintiff attempts to assert new claims in his response or revive claims that have previously been dismissed for lack of exhaustion, he is precluded from asserting any claim other than those set forth above. The requirements for a valid First Amendment retaliation claim are well established. To prove such a claim, a plaintiff must establish that: (1) he engaged in protected conduct; (2) the defendant took an adverse action against him "that would deter a person of ordinary firmness from continuing to engage in that conduct;" and (3) the adverse action was taken (at least in part) because of the protected conduct. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In addition, a plaintiff must be able to prove that the protected conduct was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

### 1.    Misconduct Ticket Claim

#### a.    Defendants Hall, Rockwell, Coburn, Hickok, and Wagner Are Entitled to Summary Judgment for Lack of Personal Involvement

Plaintiff essentially lumps all Defendants into his false-misconduct-ticket retaliation claim, but as set forth above, Defendants Stump and Simmons were the only Defendants who wrote misconduct tickets on Plaintiff. Because Defendants Hall, Rockwell, Coburn, Hickok, and Wagner did not write the allegedly false misconduct tickets, they had no personal involvement in the alleged constitutional violation and must therefore be dismissed as to this claim. *See Miller v. Calhoun Cnty.*, 408 F.3d 803, 817 n.3 (6th Cir. 2005) (noting that personal involvement in the alleged constitutional deprivation is required for Section 1983 liability).

**b.      The Statute of Limitations Bars the False-Misconduct Retaliation Claim**

Defendants raise the affirmative defense that Plaintiff's false-misconduct retaliation claim is barred by the applicable statute of limitations. On initial screening, the Court dismissed Plaintiff's complaint as time-barred because the events about which Plaintiff complained occurred between June 2 and August 12, 2015, and accounting for tolling during the time in which Plaintiff was required to exhaust his available administrative remedies, Plaintiff's complaint—filed on January 23, 2019—would still have been untimely. (ECF No. 9 at PageID.49–50.) However, the Court subsequently granted Plaintiff's motion for reconsideration based on Plaintiff's representation that the Step III appeal of his Grievance IBC-15-09-2436-28e was not resolved until January 25, 2016, giving Plaintiff until January 25, 2019—two days after Plaintiff filed his complaint—to timely file his complaint. (ECF No. 11 at PageID.62; ECF No. 14 at PageID.88.)

As it turns out, Grievance IBC-15-09-2436-28e could not have exhausted Plaintiff's false-misconduct retaliation claim. First, as noted in the May 5, 2020 Report and Recommendation, Grievance IBC-15-09-2436-28e complained not about false misconducts, but about Defendants' use of force and religious-based intimation on August 11, 2015. Moreover, the grievance was rejected as untimely at all three steps. (ECF No. 38 at PageId.258.) Second, and more importantly, Plaintiff could have exhausted his retaliatory-misconduct ticket claim only by raising the issue in the misconduct hearing and by pursuing it in an application for rehearing. (ECF No. 53 at PageID.383.) Thus, Grievance IBC-15-09-2436-28e has no bearing on when the limitations period commenced.

Defendants contend that, even accounting for tolling while Plaintiff pursued his retaliation claim through his request for rehearing on Hearing Officer Burke's decision, his retaliatory-misconduct claim is still untimely. Claims brought in Michigan under 42 U.S.C. § 1983 must be

brought within three years of the date of injury. *Wolfe v. Perry*, 412 F.3d 707, 714 (6th Cir. 2005); *Carroll v. Wilkerson*, 782 F.2d 44, 44 (6th Cir. 1986) (per curiam). The statute of limitations begins to run "when the plaintiff knows or has reason to know of the injury which is the basis of his action." *Sevier v. Turner*, 742 F.2d 262, 273 (6th Cir. 1984). Here, the limitations period would have commenced on August 11, 2015—the date Defendants Stump and Simmons wrote the misconduct tickets. *See Scott v. Ambani*, 577 F.3d 642, 646 (6th Cir. 2009) (a plaintiff has reason to know of his injury when he should have discovered it through the exercise of reasonable diligence). The statute of limitations is tolled while a prisoner-plaintiff exhausts his available administrative remedies pursuant to 42 U.S.C. § 1997e(a). *Brown v. Morgan*, 209 F.3d 595, 596–97 (6th Cir. 2000). Defendants note that Plaintiff raised the issue of retaliation in his petition for rehearing, which he filed on August 23, 2015. They further note that Plaintiff's request for rehearing was denied on October 14, 2015, which was the last step for Plaintiff to administratively exhaust his retaliatory-misconduct-ticket claim. (ECF No. 46-6 at PageID.333.) Thus, they contend, Plaintiff's January 23, 2019 filing in this case was beyond the three-year limitations period. Going one step further, Defendants contend that the claim is still time-barred even considering the November 23, 2015 date that Plaintiff was informed of the denial of rehearing, as Plaintiff conceded in his deposition that he would have received the notice no later than early December 2015. (ECF No. 62 at PageID.420–21; ECF No. 62-2 at PageID.449–50.)

Plaintiff responds that Defendants overlook the fact that he filed an action for administrative review of the hearing decision pursuant to Mich. Comp. Laws §§ 791.251–791.256 in the Muskegon County Circuit Court, which was not decided until September 15, 2016. (ECF No. 75 at PageID.570–71; ECF No. 76-10.) Plaintiff contends that his circuit-court filing tolled the limitations period until September 15, 2016, making his January 23, 2019 complaint timely.

8

(ECF No. 75 at PageID.571.) Defendants did not respond to this argument in their reply, but regardless, it lacks merit.

Under the Prison Litigation Reform Act, a prisoner is required to exhaust his available "administrative remedies" before filing suit under Section 1983. 42 U.S.C. § 1997e(a). The statute of limitations is thus tolled only while a plaintiff exhausts his available "administrative remedies." *Brown*, 209 F.3d at 596–97. As explained in *Black v. Michigan Department of Corrections*, No. 2:10-CV-11211, 2012 WL 994768 (E.D. Mich. Feb. 29, 2012), *report and recommendation adopted*, 2012 WL 987781 (E.D. Mich. Mar. 23, 2012), a plaintiff's obligation to exhaust does not extend to judicial remedies:

> [A] plaintiff's *available judicial remedies* need not be exhausted before bringing a 42 U.S.C. § 1983 claim. "[T]here is a well-established distinction between administrative and judicial remedies and Congress, in terms, did not mandate that the prisoner must exhaust his administrative remedies and exhaust his right to judicial appellate review before bringing an action within section 1997e(a)." *Jenkins v. Morton*, 148 F.3d 257, 259 (3d Cir. 1998). "Exhaustion under § 1997e(a) is administrative only; a prisoner who uses all administrative options that the state offers need not also pursue judicial review in state court; but a prisoner who does not properly take each step within the administrative process has failed to exhaust state remedies, and thus is foreclosed by § 1997e(a) from litigating. Failure to do what the state requires bars, and does not just postpone, suit under § 1983." *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002). *See also Jenkins*, 148 F.3d at 259 ("we naturally are reluctant to apply section 1997e(a) to mean other than what it says: the prisoner must exhaust his 'administrative remedies' as that term is conventionally understood, but need not exhaust state judicial remedies before bringing an action governed by that section."); *Mullins v. Smith*, 14 F. Supp. 2d 1009, 1012 (E.D. Mich. 1998) (Gadola, J.) ("Plaintiff has submitted a copy of a request for a rehearing. Decisions made in hearings by hearings officers are non-grievable. Therefore, plaintiff could not have filed meaningful grievances concerning his major misconduct hearing results. A prisoner may appeal the results of a request for a rehearing to the appropriate State Circuit Court, as set forth in M.C.L.A. § 791.255. However, this is a judicial, not an administrative, remedy. Consequently, it appears that plaintiff exhausted his state administrative remedies."); *Lee v. Unknown Palus*, No. 4:04–cv–51, 2005 WL 2253582, 3 (W.D. Mich. Sept. 15, 2005) (Quist, J.) ("The court concludes that plaintiff exhausted his administrative remedies with respect to defendant Palus' hearing decisions when he filed a request for a rehearing.").

*Id.* at *10 (footnote omitted). Thus, the limitations period was tolled for exhaustion purposes only until October 14, 2015, when Plaintiff's request for rehearing was denied. In other words, the statute of limitations for the claims in this case was not further tolled after the rehearing denial, as Plaintiff contends, for the 60-day period Plaintiff had to file his action for administrative review in the circuit court.

The Sixth Circuit has observed that the mere filing of a prior state-court action does not toll the statute of limitations for a subsequent Section 1983 federal action. *Huntsman v. Perry Local Sch. Bd. of Educ.*, 379 F. App'x 456, 461 (6th Cir. May 28, 2010) (stating that "there is no requirement of exhaustion in state court for § 1983 actions, nor does litigating first in state court toll the statute of limitations for § 1983 claims"); *see also Ramirez de Arellano v. Alvarez de Choudens*, 575 F.2d 315, 319 (1st Cir. 1978) ("Federal courts have applied to § 1983 suits in particular a rule that prior actions in the state courts do not toll the applicable state statute of limitations." (citing W*illiams v. Walsh*, 558 F.2d 667 (2d Cir. 1977), and *Ammlung v. City of Chester*, 494 F.2d 811 (3d Cir. 1974)). However, where, as here, a federal court "borrows" a state statute of limitations, state law also governs questions of tolling. *Board of Regents v. Tomanio*, 446 U.S. 478, 484 (1980); *see also Wosniak v. Henderson*, No. 99–1916, 2000 WL 1434698, at *3 (6th Cir. Sept. 19, 2000) (per curiam).

Plaintiff cites Michigan's tolling statute, Mich. Comp. Laws § 600.5856, as support for his contention that his filing of the circuit-court action tolled the limitations period in this case, but he fails to explain which provision of the tolling statute applies. Section 5856(c), which applies to medical malpractice actions, clearly does not apply. This leaves only subsection (a), which tolls a limitations period "[a]t the time the complaint is filed, if a copy of the summons and complaint are served on the defendant within the time set forth in the supreme court rules," and (b), which

10

provides for tolling "[a]t the time jurisdiction over the defendant is otherwise acquired." Plaintiff's problem here is that neither of the situations described in subsections (a) or (b) occurred. That is, Plaintiff did not sue Defendants Stump or Simmons in the circuit-court action. Instead, he sued the MDOC—the proper party for judicial review of an administrative proceeding. Thus, Plaintiff never served Defendants Stump and Simmons with the summons and complaint, and the state court never acquired jurisdiction over them. Moreover, even if either of the circumstances in subsections (a) or (b) had occurred, tolling would still not be proper, as Michigan courts have held that tolling is permissible under the statute only if the prior action was not adjudicated on the merits. *See, e.g., Yeo v. State Farm Fire & Cas. Ins. Co.*, 242 Mich. App. 483, 484 (2000) (holding that tolling was proper because the plaintiff's original action was dismissed without prejudice, which was "not an adjudication on the merits"); *Roberts v. City of Troy*, 170 Mich. App. 567, 581 (1988) ("[T]he statute of limitations is tolled during the time a prior suit is pending between the parties if the prior action is not adjudicated on the merits."). Tolling is inapplicable in this case because the circuit court decided the prior case on the merits by affirming the MDOC's decision. (ECF No. 76-10 at PageID.647.) Accordingly, I recommend that the Court dismiss the false-misconduct-ticket portion of Plaintiff's retaliation claim as time-barred.

### c. Hearing Officer Burke's Decision Is Entitled to Preclusive Effect, Barring Plaintiff from Contesting the Major Misconduct Charge

Although the Court need not reach the issue, as the false-misconduct portion of Plaintiff's retaliation claim is time-barred, as an alternative basis for summary judgment, I recommend that Plaintiff's claim against Defendant Stump be dismissed because Hearing Officer Burke's factual findings on the misconduct that Defendant Stump issued is entitled to preclusive effect under *Peterson v. Johnson*, 714 F.3d 905 (6th Cir. 2013).

11

In *Peterson*, the Sixth Circuit considered whether a hearing officer's factual finding that the plaintiff grabbed the defendant's hand should be accorded preclusive effect on the plaintiff's Eighth Amendment claim. In resolving the question, the court looked to *University of Tennessee v. Elliott*, 478 U.S. 788 (1986), which explained that "when a state agency acting in a judicial capacity resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate, federal courts must give the agency's factfinding the same preclusive effect to which it would be entitled in the State's courts." 478 U.S. at 789 (citation, internal quotation marks, and edits omitted). The *Elliott* Court identified four criteria for according preclusive effect: (1) whether the state agency acted in a judicial capacity; (2) whether the hearing officer resolved a disputed fact that was properly before her; (3) whether the party to be precluded had an adequate opportunity to litigate the factual dispute; and (4) if the other three criteria are satisfied, the finding is given the same preclusive effect as it would be given in state courts. *Id.* at 912-13. After applying the four *Elliott* criteria to the MDOC's major misconduct hearing process, the Sixth Circuit in *Peterson* concluded that Michigan courts would grant preclusive effect to the hearing officer's finding that the plaintiff grabbed the defendant's hand. *Peterson*, 714 F.3d at 917.

The Sixth Circuit revisited the issue a year later in *Roberson v. Torres*, 770 F.3d 398 (6th Cir. 2014), another civil rights action by a prisoner alleging excessive use of force. The court limited its holding in *Peterson*, noting that the question of preclusion had to be decided on a case-by-case basis. The court observed:

> To the extent that Torres argues that, in light of *Peterson*, any factual findings by a hearing officer in a major-misconduct hearing in a Michigan prison are to be accorded preclusive effect, we reject such a reading of *Peterson* as overbroad. *Peterson* is not a blanket blessing on every factual finding in a major-misconduct hearing. Although the language of our opinion in *Peterson* is at times categorical, our decision to accord preclusive effect to particular findings from Peterson's prison hearing necessarily turned, at least in part, on the particular circumstances of Peterson's case. Indeed, the question of preclusion cannot be resolved

12

> categorically, as it turns on case-specific factual questions such as what issues were actually litigated and decided, and whether the party to be precluded had sufficient incentives to litigate those issues and a full and fair opportunity to do so—not just in theory, but in practice. *Id.* at 916–17. It likewise turns on the court's "sense of justice and equity," *Blonder–Tongue Labs., v. Univ. of Ill. Found.*, 402 U.S. 313, 334, 91 S. Ct. 1434, 28 L. Ed. 2d 788 (1971), which may require a case-by-case analysis of surrounding circumstances.

*Id.* at 404–05. The court further found that the record had not been sufficiently developed for the court to resolve the preclusion issue on appeal. Consequently, it remanded the case for consideration of the preclusion argument, directing the district court to give particular attention to the fairness and accuracy of the hearing officer's factual findings. *Id.* at 405. The court further identified pertinent inquiries, "including why the hearing officer refused to review the alleged video of the incident, whether the hearing officer provided a sufficient and reasonable basis for her factual findings, and whether the testimony of other witnesses corroborated the accounts provided by either Roberson or Torres." *Id.*

A number of courts in this circuit have held that the *Roberson/Peterson* analysis applies to claims that an officer issued a false misconduct ticket.[1] *See Cannon v. Bernstein*, No. 09-14058, 2015 WL 5719665, at *2 (E.D. Mich. Sept. 30, 2015) (holding that, in determining whether the results of a finding of guilt on a major-misconduct ticket precludes a claim that an officer falsely and maliciously accused the prisoner of the misconduct, the court must apply the standards set forth in *Peterson* and *Roberson*); *Moore v. Larson*, No. 2:15-cv-140, 2016 WL 7438059, at *2

---

[1] I do not consider the preclusion issue as to Hearing Officer Burke's decision on the minor misconduct tickets that Defendant Simmons wrote because the Sixth Circuit has indicated that prisoners do not enjoy the same protections in hearings on minor misconduct charges that they are provided in major misconduct hearings. *See Maben v. Thelen*, 887 F.3d 252, 260–61 (6th Cir. 2018). Although the case could certainly be made that Plaintiff received the same protections afforded in major misconduct hearings for all of the misconducts at issue because the hearings on both tickets were combined, Defendants do not directly address this issue, and at least one potential difference remains in that "[t]here is no judicial review in state court of a minor misconduct report." *Id.* at 261 (citing *Martin v. Stine*, 214 Mich. App. 403 (1995)).

(W.D. Mich. Dec. 27, 2016) (holding that a retaliatory misconduct is governed by the rule of *Peterson* and *Roberson*); *Thomas v. Thomas*, No. 11-12193, 2016 WL 5799342, at *2-4 (E.D. Mich. Oct. 5, 2016) (applying *Roberson* to a claim of retaliatory misconduct, where the prisoner-plaintiff sought summary judgment on the ground that he was found not guilty of the misconduct, but holding that misconduct finding was not preclusive because the defendant did not have incentive to vigorously contest the misconduct outcome); *Jones v. Loop*, No. 2:15-cv-203, 2016 WL 3735783, at *5 (W.D. Mich. July 13, 2016) (applying *Peterson* to retaliatory misconduct claim and dismissing based on guilty finding).

All of the requirements set forth in *Peterson* are established in this case. As to the first factor, a state agency "acts in a judicial capacity when it hears evidence, gives the parties an opportunity to brief and argue their versions of the facts, and gives the parties an opportunity to seek court review of any adverse findings." *Peterson*, 714 F.3d at 912 (internal quotation marks and brackets omitted). In this case, Hearing Officer Burke, an attorney employed by the Michigan Officer of Administrative Hearings and Rules, Michigan Department of Licensing and Regulatory Affairs, conducted a full hearing at which she considered evidence, including the misconduct report, the video of the incident—which clearly depicted the incident—Plaintiff's statement and his 20-page list of questions, the misconduct reports, and staff statements. (ECF No. 36-4 at PageID.208–09.) In addition, Hearing Officer Burke set forth her factual findings and the evidence on which she relied in a hearing report. (*Id.*; ECF No. 62-2 at PageID.447–48 (Plaintiff admitting that he attended the hearing, gave a verbal statement, made a request for evidence, and gave the hearing officer a 20-page written statement with questions).)

Second, Hearing Officer Burke resolved disputed issues of fact, including whether Plaintiff assaulted staff by resistance, as Defendant Stump had charged. (ECF No. 36-4 at PageID.209–09.)

In making these findings, the hearing officer specifically addressed Plaintiff's arguments and defenses to the charges. The hearing officer also explained why certain documents and questions of prisoner witnesses would not disprove the charges. (*Id.*) Third, as set forth above, Plaintiff had an adequate opportunity to litigate the factual dispute. Plaintiff was permitted to make a verbal statement, submitted a written statement and questions, was present for the hearing, had the benefit of a written decision, requested a rehearing, and filed an action in circuit court for administrative review. *Peterson*, 714 F.3d at 913. Finally, since the first three requirements are satisfied, Hearing Officer Burke's decision should be given preclusive effect because Michigan courts would do so under the present circumstances. *Id.* at 914–17. In short, Plaintiff had ample incentive to defend the major misconduct charge and fully took advantage of the procedural protections provided by statute. *Id.* at 915.

Plaintiff's arguments to the contrary are not persuasive. First, the fact that Plaintiff claimed at the hearing that the misconduct was retaliatory is not material. The hearing officer's conclusion, after reviewing the video recording, was that Plaintiff's conduct of "snatch[ing] his arm from [Stump]" satisfied the definition of assault and battery under Policy Directive 03.03.105. (ECF No. 36-4 at PageID.209.) This factual finding also resolved Plaintiff's claim of retaliation. Second, Plaintiff's assertion that the hearing officer denied him an opportunity to present evidence and to submit questions to eye-witnesses in support of his defense fails to show that Plaintiff lacked "an adequate opportunity to litigate the factual dispute." *Maben*, 887 F.3d at 259 (quoting *Peterson*, 714 F.3d at 913). Documents such as Plaintiff's medical records regarding his chronic knee and ankle injuries, a list of misconduct tickets that Defendant Simmons issued to Muslim prisoners, and excerpts from the Quran, among other things, were not material to the hearing officer's decision. Hearing Officer Burke was entitled to exclude evidence that was "[i]rrelevant,

15

immaterial, or unduly repetitious," Mich. Comp. Laws § 791.252(g), and she did so, fully explaining the bases for her decisions. Finally, Plaintiff's new evidence—declarations from prisoners Ronald Fordham and Dendre Owens (ECF No. 76-7; ECF No. 76-8)—do not undermine the preclusive effect of Hearing Officer Burke's findings. As Defendants note, the circumstances—two witnesses never before mentioned in the case or in the previous administrative proceedings—are facially suspicious; however, this is not an issue for summary judgment. Nonetheless, Plaintiff fails to present any evidence indicating that he ever requested Hearing Officer Burke to obtain statements from Fordham and Owens at the misconduct hearing.

### 2.    Medical Accommodation Claim

Defendants argue that Plaintiff's claim that they retaliated against him by canceling his athletic shoe accommodation fails as a matter of law because they had nothing to do with canceling the accommodation. As support, each Defendant has submitted an affidavit stating that he had no authority over Plaintiff's medical decisions and were not involved with his medical accommodation. (ECF No. 62-5 at PageID.470; ECF No. 62-6 at PageID.474; ECF No. 62-7 at PageID.478; ECF No. 62-8 at PageID.481; ECF No. 62-9 at PageID.484.) This is consistent with the evidence, discussed above, that Plaintiff's medical accommodation for athletic shoes was canceled, or not renewed, by the medical provider at MCF in consultation with the ACMO and not by Defendants. Plaintiff presents no evidence indicating that Defendants had anything to do with canceling his athletic shoe accommodation. The closest he comes is citing the response to his Step I grievance about being denied medical shoes at MCF and P.A. Bien's September 9, 2015 progress note, both of which indicate that IBC custody staff was seeking to have MCF staff purchase athletic shoes for Plaintiff because the pair he had been issued at IBC were not included in his property. (ECF No. 75 at PageID.596 (citing ECF No. 62-3 at PageID.458 and ECF No. 62-4 at PageID.463).) Contrary to Plaintiff's assertion, these documents do nothing to prove his claim that

16

Defendants retaliated against him by canceling his shoe accommodation. Instead, they show that someone on IBC's custody staff was actually trying to replace Plaintiff's missing shoes.

Plaintiff offers a new twist on his claim in his response. That is, he now says that Defendants, in a "post attack" discussion or meeting, conspired to steal his shoes, which led to the cancelation of his medical accommodation. (ECF No. 75 at PageID.596–97.) But this is not Plaintiff's claim in his amended complaint, and it is not the claim that he exhausted. Plaintiff did not allege that Defendants stole his shoes. Instead, he alleged that "Defendants . . . cancelled Plaintiff's medical accommodations for medical gym shoes and inserts." (ECF No. 17 at PageID.106.) In the grievance Plaintiff cited in opposition to Defendant's summary judgment motion based on lack of exhaustion, Plaintiff alleged that "he was transferred with recommendation that his medical accommodation be terminated." (ECF No. 62-3 at PageID.457.) Apart from the fact that Plaintiff may not amend his complaint by asserting new facts in his response brief, *see Kallick v. U.S. Nat'l Bank Ass'n*, No. 12-106, 2012 WL 5178152, at *6 (E.D. Ky. Oct. 18, 2012), it is far too late in the day for Plaintiff to assert a new claim in this case, let alone one that has never been exhausted.

Accordingly, I recommend that the Court grant summary judgment on this aspect of Plaintiff's retaliation claim.

## IV.  Conclusion

For the foregoing reasons, I recommend that Defendants' Motion for Summary Judgment (ECF No. 61) be **granted**, and that Plaintiff's remaining claims be **dismissed with prejudice**.

Dated: August 4, 2021                  /s/ Sally J. Berens
                                       SALLY J. BERENS
                                       U.S. Magistrate Judge

17

**NOTICE**

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within 14 days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).